(61 App. Div. 323.)

KENT v. COMMON COUNCIL OF CITY OF BINGHAMTON et al.

(Supreme Court, Appellate Division, Third Department. May 9, 1901.)

STREET RAILROADS—CONSOLIDATION—PAVING OF STREETS—CONTRACTS.

Under Railroad Law (Laws 1890, c. 565) § 72, providing that consolidation of railroad companies shall not relieve the new company from any of the restrictions or liabilities of the several companies so consolidated, where street-railway companies, having a contract with a city relieving them from their obligation to keep the streets over which they operate in repair on condition of their assuming payment of the part of the cost of laying new pavement between the rails of their tracks, consolidate, and the new company afterwards consolidates with other companies not parties to the contract and under statutory liability to pave the streets between their tracks, such first contract does not relieve the last company from paying the full costs of paving streets on the lines of the companies not parties to the contract, and not embraced in any of its provisions, though the contract stipulates that it is to inure to any company with which the parties to it may consolidate, and that it shall extend to any additions or extensions of the tracks of such railway companies.

Smith, J., dissenting.

Appeal from special term, Broome county.

Bill by George A. Kent against the common council of the city of Binghamton and another to enjoin the collection of expenses for street paving. From a judgment in favor of defendants, plaintiff appeals. Reversed.

On March 24, 1890, the Binghamton Street-Railroad Company was formed by a consolidation of four of the separate corporations operating surface street railroads in Binghamton. Among the street railroads not included in the consolidation was the Binghamton & Port Dickinson Railroad, incorporated by chapter 501, Laws 1868. In 1891 a judgment for $5,181.12 was obtained by the city of Binghamton against the Binghamton & Port Dickinson Railroad Company for the expense of paving between its railway tracks on Chenango street, which judgment was in that year reversed by the general term, and a new trial ordered. At the time of the making of the contract hereinafter mentioned a retrial had not been had, and the action was pending. On April 26, 1892, a contract was made between the Binghamton & Port Dickinson Railroad Company and the Binghamton Street-Railroad Company of the one part and the city of Binghamton of the other part, in pursuance of resolutions passed by the common council of Binghamton, and accepted by the parties of the first part, which contract consented that the Binghamton & Port Dickinson Railroad Company could change its motive power to electricity, and maintain the necessary structures therefor, on condition that the city might use the poles to be erected by the company for fire and police purposes, and also for electric light if at any time thereafter needed; granted permission to the said Binghamton & Port Dickinson Railroad Company to relay its tracks, and build a double track on Chenango street south of the Erie Railway and on Court and Main streets to the city limits, and to make proper connections. between its tracks and the tracks of any other street railway in the city; provided, "that in lieu of all obligations on the part of the said Binghamton & Port Dickinson Railroad Company to keep the surface of the streets and highways within the rails of its tracks, and for one foot outside thereof, and to the extent of the ties, in good and proper repair and order, as required by

70 N.Y.S.—30

the act incorporating the said railway company, or by any other provision of
law, the said company shall hereafter pay to the city of Binghamton one-fifth
of the net cost of laying new pavement between the rails of its tracks, and,
shall also pay to the said city the sum of $1,036.22, the same being one-
fifth of the cost of paving between the rails of said company's track on
Chenango street north of the Erie Railway, upon the payment of which the
said action now pending is to be discontinued without costs to either party."
The contract further provided that all tracks thereafter laid or relaid by the
said railroad company through streets then paved or which might thereafter
be paved should be laid with a girder rail, or some rail of a more improved
form, and that on that part of Main and Chenango streets not paved the said
company may lay a T rail, or one of a more improved form, and should keep
the roadway between the rails and for one foot outside thereof in good con-
dition and repair until such street should be paved. The Binghamton Street-
Railroad Company is included within the foregoing provisions of the contract
so far as they are applicable, and in respect to each company the contract
contains the following further provisions: "Which contract shall inure to the
benefit of, and be binding upon, its successors and assigns, and to any com-
pany with which it may be hereafter merged or consolidated." "The terms
and conditions herein set forth shall apply and extend to any additions or ex-
tensions of the tracks of said railway company." On August 23, 1892, the
Binghamton & Port Dickinson Railroad Company and the Binghamton Street-
Railroad Company, the parties of the first part to this contract, were consoli-
dated under chapter 565 of the Laws of 1890, as amended by chapter 676 of the
Laws of 1892, and formed a new corporation by the name of the Binghamton
Railroad Company. On March 28, 1893, an act was passed by the legislature
(chapter 231, Laws 1893) referring to the contract of April 26, 1892, and pro-
viding that the contract "is hereby in all things legalized." The Court Street
& East End Railroad Company was incorporated under chapter 252 of the
Laws of 1884, and in 1887 constructed, and until its consolidation, hereinafter
mentioned, operated, a street-surface railroad along Court street between
Carroll and Liberty streets, and beyond in the city of Binghamton. In April,
1894, the Binghamton Railroad Company, the Court Street & East End Rail-
road Company, and the West Side Railroad Company were consolidated under
chapter 565 of the Laws of 1890 and the amendatory acts under the name of
the Binghamton Railroad Company. In the summer of 1898 the city of Bing-
hamton paved Court street, between Carroll and Liberty streets, with brick,
and assessed against the defendant the Binghamton Railroad Company one-
fifth of the expense of paving between the rails of its tracks on said street,
assessed one half of the remainder against the abutting owners, and the other
half against the taxpayers at large. This action was brought to enjoin the
common council of the city of Binghamton from collecting from the taxpayers
at large, or from the abutting owners on Court street, any portion of the ex-
pense of paving said street between the tracks and the rails of the tracks and
two feet in width outside of the tracks of the Binghamton Railroad Company,
the plaintiff claiming that it was the duty of the common council, under sec-
tion 98 of the railroad law, to levy and collect such portion of the expense
from the Binghamton Railroad Company, and also to obtain a judgment that
the said railway company pay to the city of Binghamton such portion of the
said expense. The claim of the defendants is that the contract of April 26,
1892, as legalized by the legislature, is controlling, and under it the defendant
railroad company is liable for only one-fifth of the expense of paving between
the rails of its tracks. The plaintiff further claims that the contract of April
26, 1892, is not applicable to the paving of Court street. On both of these
questions the decision of the trial court was adverse to the plaintiff, and from
the judgment entered thereon this appeal is taken.

Argued before PARKER, P. J., and KELLOGG, EDWARDS,
SMITH, and CHASE, JJ.

Carver & Deyo (D. H. Carver, of counsel), for appellant.

Curtiss & Keenan (George B. Curtiss, of counsel), for respondent
Binghamton R. Co.

Frank Stewart, for respondent common council of city of Binghamton.

EDWARDS, J. It was held by the trial court that the agreement of April 26, 1892, between the city of Binghamton and the Binghamton Street-Railroad Company and the Binghamton & Port Dickinson Railroad Company, as legalized by the special act of the legislature passed March 28, 1893, is a valid and binding obligation on the parties. It was also held that the terms and provisions of the contract apply to the paving of Court street, between Liberty street and Carroll street, in Binghamton, N. Y. In the latter conclusion I am unable to concur. At the time of the making of the contract the Court Street & East End Railroad was an independent company, incorporated under chapter 252 of the Laws of 1884, since 1887 had owned and operated its road on that part of Court street on which the pavement in question was laid, and was in no way a party to the contract. When this company consolidated in 1894 with the Binghamton Railroad Company and with the West Side Railroad Company, the new corporation thus formed took the name Binghamton Railroad Company. Some confusion has arisen out of the fact that the name of this new corporation is the same as the name of the corporation formed by the consolidation, in August, 1892, of the Binghamton & Port Dickinson Railroad Company and the Binghamton Street-Railroad Company, the parties of the first part to the contract. Although the name is the same, the corporation is not the same. Section 71 of the railroad law, under which these three companies consolidated, provides that the directors of the consolidated corporations shall enter into a joint agreement, which, among other things, shall state "the name of the new corporation," and "the manner of converting the capital stock of each corporation into that of the new corporation"; provides for obtaining the consent of two-thirds of the stockholders, and that "thereafter such corporations, parties thereto, shall be one corporation by the name provided in such agreement." In pursuance of the statute the joint agreement of the three companies provided that the name of the "new corporation shall be Binghamton Railroad Company." It could as well have taken the name of either of the other corporations or a name entirely new. At the time of this consolidation chapter 252 of the Laws of 1884, under which the Court Street & East End Railroad was incorporated, had been repealed by chapter 565 of the Laws of 1890 (the railroad law), and section 90 of the latter law made that company subject to the requirements of that act. Section 98 of that act requires that "every street surface railroad corporation * * * shall have and keep in permanent repair that portion of such street, avenue or public place between its tracks, the rails of its tracks, and two feet in width outside of its tracks." It was held in Conway v. City of Rochester, 157 N. Y. 33, 51 N. E. 395, that this requirement includes the paving and repaving by the railroad company of the portion of the street required to be kept in repair by the company, and that the expense thereof cannot be charged on the abutting owners, or on the taxpayers at large. Clearly, this expense, but for the consolidation, would be an

obligation of the Court Street & East End Railroad Company, and no
part of it could be charged to the abutting owners or taxpayers.  It
is equally clear that by the provisions of sections 71 and 72 of the rail-
road law, on the consummation of the consolidation, the new corpo-
ration, the Binghamton Railroad Company, succeeded to all the
rights, privileges, and property of each of the three consolidat-
ing companies, and also became burdened with all the duties and
obligations of each of said companies.  Section 72 expressly states
that such act of consolidation shall not release such new corpo-
ration from any of the restrictions, liabilities, or duties of the sev-
eral corporations so consolidated.  How, then, was the Binghamton
Railroad Company relieved of this legal obligation to pay the portion
of the expense required by statute for paving Court street between
Liberty street and Carroll street?  Its counsel says it was relieved by
the provisions of the contract of April 26, 1892.  But the Court Street
& East End Railroad Company was not a party to that contract, nor
was its road, in express terms, embraced within any of its provisions.
The only parties to that contract besides the city of Binghamton were
the Binghamton & Port Dickinson Railroad and the Binghamton
Street Railroad, as to each of whom the agreement was that, in lieu
of its then existing obligations to keep the surface of the streets with-
in the rails of its tracks, and for one foot outside, and to the extent
of the ties in good repair, "the said company shall hereafter pay to
the city of Binghamton one-fifth of the net cost of laying new pave-
ment between the rails of its tracks."

The defendants contend that this exemption extends to the tracks
of what was then the Court Street & East End Railroad Company by
virtue of the two provisions in the contract that the "contract shall
inure to the benefit of and be binding upon its [Binghamton & Port:
Dickinson Railroad Company or Binghamton Street-Railroad Com-
pany] successors and assigns, and to any company with which it
may be hereafter merged or consolidated"; and that "the terms and
conditions herein set forth shall apply and extend to any additions or
extensions of the tracks of said railway company."  I think these
clauses are not susceptible of such a construction.  What, by the first
of these provisions, was to inure to the benefit of the successors or
assigns of each of the contracting railroad companies and to any
company with which it might thereafter be consolidated?  Clearly, it
is the same benefit that the contract gives to each of those companies
of exemption from a part of its statutory liability for expense of
pavement in those parts of the streets in which such company was
operating its road.  In respect to such parts of the streets the con-
tract gave exemption to each of said companies from its liability to
the extent that thereafter it should pay "one-fifth of the net cost of
laying new pavement between the rails of its tracks"; and, in view
of the fact that the property of such company might thereafter be
transferred to another, it was the intention of this provision that as
to those parts of the streets the same exemption should extend to and
inure to the benefit of the successor of such company or to the com-
pany with which it might consolidate.  It could not have been in-
tended to apply to the tracks of other railroads then operated, or-

which might at any time thereafter be operated, by other companies in other parts of the city of Binghamton. Nor do I think that the defendant is relieved from its legal burden by the other clause in the contract that "the terms and conditions herein set forth shall apply and extend to any additions or extensions of the tracks of said railway company." The track of the Court Street & East End Railroad Company in Court street was not in any sense an addition or extension of the tracks of either of the contracting railroad companies, and did not become so on the consolidation of the company with the other two railroad companies. It then became the property of the new corporation. The contention of the defendants' counsel is that, as a result of the consolidation of the two contracting companies, after the execution of the contract, and the forming thereby of a new corporation, and of the consolidation, two years thereafter, of this new corporation with two other railroad companies, thereby forming another new corporation, this last corporation, by virtue of these two provisions of the contract, became entitled to the partial exemption provided in the contract from its statutory obligation for the expense of paving Court street. If this be so, it must likewise have the same exemption in respect to the expense of paving any other street on which the tracks of any of the consolidating companies were laid. Suppose this new corporation, the defendant, should hereafter consolidate with other companies now existing or hereafter organized and operating roads in other streets of Binghamton, would the new corporation formed thereby be entitled to the exemption of the contract from the expense for paving all the streets used by the consolidating companies? Yet this is the logical result of the contention of the defendants' counsel. Such consolidations might continue indefinitely with the growth of the city, and the exemption would thereby be indefinitely extended.

It is also claimed by the defendants that the application of the provisions of the contract to the Court Street & East End Railroad Company was within the contemplation of the contracting parties. If so, they failed to express such intention in any reasonably clear language. If such had been their purpose, they would have undoubtedly employed suitable language to express it. While I do not deem it of especial importance as bearing on that question, there is some testimony on the question which is not without some significance. Mr. Curran, who was the mayor of the city of Binghamton in 1891 and 1892, when the resolutions were passed by the common council, and was a member of the special committee appointed to take the question into consideration, testifies that during any of the time that these matters were pending before the common council, or before the committee, there was no claim made by the representatives of the Binghamton & Port Dickinson Railroad Company and the Binghamton Railroad Company that the contract related to included, or was to include, the Court Street & East End road. Mr. Wentz, who was president of the common council in 1892, testifies to the same thing. The contract in question is one whereby each of the contracting railroad companies was exempted from a large legal obligation in consideration of $1,036.22, paid by one of the companies

to the city of Binghamton in settlement of a litigation between that company and the city, and of the privilege of stringing on the poles of the companies the police and fire wires of the city, and its electric light wires, if the city should ever own an electric light plant. The difference between the amount of the statutory obligation of the defendant railroad company and the amount of its obligation as claimed by the company is, alone for the paving of less than half a mile of Court street, over $8,000. A contract of such character granting exemption from taxation should not be so construed as to extend its provisions for exemption beyond its explicit terms or the clear and reasonable intention of the parties. Such a construction produces the conviction that the contract has no application to the pavement laid on Court street, between Liberty and Carroll streets, and that for this reason the judgment should be reversed.

Judgment reversed, and new trial granted, with costs to appellant to abide event. All concur, except SMITH, J., who dissents.

SMITH, J. (dissenting). I cannot concur in the opinion of Mr. Justice EDWARDS. The legislature clearly had authority to legalize the contract, and such legalizing act in no way infringed upon any constitutional limitation. Had the contract read that it "shall inure to the benefit of, and be binding upon, its successors and assigns, and to any company 'into which' it may be hereafter merged or consolidated," the conclusion of Mr. Justice EDWARDS might be claimed to be the logical intendment of such a provision. The expression, however, " 'with' which' it may be hereafter merged or consolidated," to my mind clearly points to any independent company with which the Binghamton Street Railroad shall be consolidated.

The obligations, as well as the benefits, under the contract follow to the Court Street & East End Railroad Company. That company and its successors are compelled to pay one-fifth of the cost of paving between the tracks for all time, even though the legislature should repeal the general provision requiring street-railroad companies to pave between their tracks. In this view it is not improbable that it was the intention of the parties to include within the contract any street-railroad company with which the Binghamton Street-Railroad Company might be consolidated.

The city of Binghamton is not here complaining of this contract. The court is not requested to grant equitable relief from its provisions. The sole question is as to its legal interpretation, and the specific provision of the contract seems to me to leave no room for oral evidence or speculation as to what may have been the intention of the parties.

I therefore concur with the conclusion of the learned court below.