---

(62 App. Div. 525.)

WEED et al. v. COMMON COUNCIL OF CITY OF BINGHAMTON et al.

(Supreme Court, Appellate Division, Third Department. June 28, 1901.)

1. MUNICIPAL CORPORATIONS — STREET PAVING—ASSESSMENT—STREET RAIL-
   WAYS—EXEMPTION—EXTENSIONS—CONTRACTS—CONSTRUCTION.
       Where a city agreed with two street-railway companies that they should pay one-fifth of the net cost of laying new pavement between the rails, the contract to apply to any extensions of their tracks, and be binding on their successors and any company with which they might be consolidated, such contract embraces a subsequent extension of the tracks made by a company formed by the consolidation of the two companies contracting.

2. SAME—VALIDITY—RATIFICATION—STATUTE.

Under Railroad Law, § 93, as amended by Act April 23, 1901, providing that any city of the third class can contract with a street-railway company regulating the payment of percentages for paving of streets, and ratifying any such contract theretofore entered into, a contract previously made between a city and a street-railroad company that such company should pay one-fifth of the net cost of laying new pavement between the rails of its tracks, which contract extended to any extension of the tracks, was ratified, and the company was not liable in any greater amount than stipulated for paving on an extension.

3. SAME—EFFECT—PENDING ACTIONS.

Where a city of the third class had contracted with street-railway companies as to the cost of new pavements between their rails, a general law authorizing cities of the third class to make such contracts, and confirming those previously made, passed after the commencement of suit by taxpayers to compel the city to disregard the contract, and enforce against the company a tax to the full extent provided by law, destroys the right of action.

4. SAME—RATIFICATION—CONSTITUTIONALITY—AMENDMENT OF CHARTER.

Act 1893, c. 231, ratifying and legalizing in express terms a contract between a city and street-railway companies as to cost of pavements between the tracks, cured all infirmities of the contract arising from lack of power on the part of the contracting parties, and being, in effect, an amendment to the charter of the city, giving it power to make the contract, was not violative of the constitutional provision against the passage of special laws.

5. SAME.

Act 1893, c. 231, ratifying and legalizing in express terms a contract between a city and street-railway companies as to cost of pavements between the rails, is not unconstitutional, as granting an exclusive privilege, immunity, or franchise to a private corporation.

6. SAME—VESTED RIGHTS—SUBSEQUENT LEGISLATION.

There being no general law imposing any duty of paving on street-railway companies at the time of the passage of an act ratifying a contract between them and a city as to the cost of pavements between the rails, such act made the subject of paving a matter of contract, which could not be affected by the general railroad law, subsequently passed, relating to the extent of liability of railroads for street improvements.

Appeal from special term.

Action by James B. Weed and others against the common council of the city of Binghamton and others. From an order dismissing the complaint, plaintiffs appeal. Affirmed.

The action is brought by taxpayers of the city of Binghamton, whose assessments aggregate $5,000, and who, as owners of real estate abutting on Front street, between Main and Ferry streets, in said city, are liable for assessments for paving Front street, as provided by resolution of the common council; and the purpose of the action is to compel the city to enforce against the said Binghamton Railroad Company a tax for such paving improvements to the full extent provided by the general railroad law. The city and railroad company allege as a defense a contract made in 1892 by and between the city of Binghamton and two surface street-railway corporations, to whose rights this railroad company has succeeded, by which the tax for such paving improvements was limited and fixed, and the issues as joined involve the validity of that contract, and its construction. so far as to determine whether it covers the street in question. The other pertinent facts appear in the opinion.

Argued before PARKER, P. J., and KELLOGG, EDWARDS, SMITH, and CHASE, JJ.

Charles S. Hall, for appellants.
Frank Stewart, for respondent city of Binghamton.
Curtiss & Keenan, for respondent Binghamton R. Co.

KELLOGG, J. The trial court has found, from undisputed testimony, that the Binghamton Railroad Company, defendant, was formed by the consolidation, under the laws of this state, of the Binghamton Street-Railway Company and the Binghamton & Port Dickinson Railway Company, and such consolidation was perfected August 11, 1892; that the consolidated company succeeded to all the rights, franchises, and privileges of each of the companies so consolidated; that on April 26, 1892, in settlement of a pending action touching the liability for street paving, and in settlement of other controversies and for other considerations, the city of Binghamton entered into a written contract with the two companies so subsequently consolidated, and by such contract, among other things, it was agreed as follows:

"That in lieu of all obligations on the part of the said Binghamton & Port Dickinson Railway Company to keep the surface of the streets and highways within the rails of its tracks, and for one foot outside thereof, and to the extent of the ties, in good and proper repair and order, as required by the act incorporating the said railway company, or by any other provision of law, the said company shall hereafter pay to the city of Binghamton one-fifth of the net cost of laying new pavement between the rails of its tracks. * * * The terms and conditions herein set forth shall apply and extend to any additions or extensions of the tracks of said railway company, * * * which contract shall inure to the benefit of, and be binding upon, its successors and assigns, and to any company with which it may be hereafter merged or consolidated."

The provisions of the contract as to the Binghamton Street-Railway Company are in all respects similar, except that the Binghamton Street-Railway Company is to do other things, and it is also to pay "one-fifth of the net cost of all new pavements hereafter laid between the rails of its tracks." The same wording is used as to "additions and extensions," and the same provision is made touching the binding quality of the obligation upon and towards "successors or assigns, and to any company with which" it might be thereafter merged or consolidated. The city of Binghamton applied to the legislature thereafter, and procured an act to be passed which became a law March 28, 1893, whereby the said contract in express terms was ratified and legalized. Thereafter the said consolidated company and the said city of Binghamton treated said contract as a binding agreement, and acted thereunder, observing all of its provisions. On or about April 1, 1896, the Binghamton Railroad Company, being the company formed by the consolidation of the two companies, entering into said contract with the city of Binghamton, applied to the city of Binghamton for leave to extend its tracks along Front street between Main and Ferry streets. Such permission was, on terms, granted, with the express provision that all the terms of the before-mentioned contract should apply to and cover this extension. On such terms the permission to extend the tracks was granted and accepted, and this action relates to paving

directed to be done on this street since the Binghamton Railroad Company laid its tracks thereon. The Binghamton Railroad Company has paid one-fifth of the cost of paving between its tracks on this extension, as provided by said contract, and the city of Binghamton has refused to take any action to compel the company to pay more.

I think that the contract, fairly construed, embraces this extension in Front street. The language of the contract expressly includes extensions thereafter to be made, not by the contracting companies only, but by any company with which either might thereafter consolidate. The union of the two contracting companies did not diminish the obligations of the consolidated company imposed by the contract. Neither did it curtail any of the privileges secured by those contracting companies. One of these was the right to extend the contract over the extended tracks. The contract extended itself by its terms, and neither party, without the consent of the other, could prevent this. To remove all doubt as to the construction of the contract, however, it was expressly agreed before the extension was made that it should come under the contract.

By an amendatory act, amending section 93 of the railroad law, passed April 23, 1901, which act went into effect immediately, it was provided:

"This section [93 as amended] shall not affect any contract heretofore entered into between a street surface railroad corporation and any city of the third class, town or village, regulating the payment of percentages or paving of streets, and any city of the third class, town or village, is hereby authorized to enter into any such form of contract with any street surface railroad corporation, and any such contract heretofore entered into is hereby ratified and confirmed."

If there has heretofore existed any doubt as to the power of the city of Binghamton, under its charter, to contract with a street-railway company touching the pavement of streets in which the tracks of the company are laid, such doubts are dispelled by the provisions of this law. The legislature, recognizing the obvious fact that what would be a reasonable burden in one municipality and in one portion of a municipality might be a prohibitive burden in another municipality or in another part of the same municipality, has here, respecting percentages to be paid and paving to be done, given to cities of the third class, and to towns and villages, a free hand, and power to contract to the exclusion of all general laws on the subject, and to the exclusion of all burdens imposed by general laws. This power to contract means to acquire rights by contract, property rights vested through the terms of a contract, privileges and immunities which cannot afterwards be taken away without the consent of the contracting parties. Whatever doubts there may be as to the power of the legislature to impose new burdens upon corporations, inconsistent with the terms of a special charter theretofore granted by the legislature, there can be no doubt as to the legislative power to remove such burdens, and to give leave to the municipalities and to the corporations to contract in lieu of them. Nor do I think there can be any doubt as to the power of the legis-

lature to recognize, ratify, and confirm any existing unrepudiated contract such as is here in this law referred to, and make such contract, if before doubtful because of lack of power delegated to the contracting parties, good ab initio by such ratification. "If the act could have been lawfully done under precedent legislative authority, the legislature may ratify it and give it effect." Dill. Mun. Corp. p. 377. "The healing statute must in all cases be confined to validating acts which the legislature might previously have authorized." Cooley, Const. Lim. p. 381.

Although this law was passed since the trial of this action, it is a general law, and the court is bound to take notice of it so far as it applies and gives validity to this contract from the time of its execution. There are no vested rights intervening between the date of the contract and the passage of this law. The right of action of the plaintiffs, if any they ever possessed, did not arise in contract. The right of action, as they allege it, is the right to compel the city of Binghamton to do its duty and disregard the contract as invalid. If this law has the effect of making the contract valid, the plaintiffs are simply legislated out of court, for there no longer remains a duty unperformed.

But I do not think the defendants need stand upon this law alone. It seems to me that the legalizing act of 1893 (chapter 231) cured all the infirmities of the contract arising out of a lack of power on the part of the contracting parties. It was without doubt the intention of the legislature to make such cure effectual and complete. It was, in effect, the same as an amendment to the charter of the city of Binghamton giving power to the common council to make the contract. That the legislature might make such amendment, and not be properly chargeable with violating the provisions of the constitution against the passage of any but general laws on certain specified subjects, is not to be questioned. The particular subject called to our attention by the appellant is that of granting to any private corporation, association, or individual exclusive privilege, immunity, or franchise. This legalizing act does neither of these things. There is here no exclusive immunity or privilege. The legislature might grant to any other corporation or individual in the city of Binghamton the same immunity and privilege, and in no way, infringe upon this grant. I see nothing in the constitutional objections urged against this act of the legislature.

At the time of the passage of this act, in 1893, it is conceded that there was no general law which imposed any duty of paving upon this corporation, or upon either of the corporations from which it was formed. By this act, validating and ratifying the contract, the subject of paving became a matter of contract, and immunity from additional burdens was secured. This was a property right, and no subsequent legislation could affect it. The burdens in this respect imposed by the general railroad law subsequently, upon all corporations, had no application to this corporation, because its contract was its perfect shield.

It is unnecessary to discuss the various other questions and phases presented on the argument of this appeal. The question of the cor-

rectness of the decision of the trial court stands upon the validity of this contract and its construction. Holding it valid from the date of its execution, and that by its terms the extension in Front street is embraced, the decision appealed from must be affirmed.

Judgment affirmed, with costs. All concur.