KENT v. COMMON COUNCIL OF CITY OF BINGHAMTON et al.

(Supreme Court, Appellate Division, Third Department. May 23, 1902.)

STREET RAILWAYS—FRANCHISE—EXTENSION—PAVING—CONTRACT WITH CITY.

Defendant street railway company contracted with the city for exemption from the expense of paving in the streets where its tracks, or extensions thereof, were laid. Subsequently it consolidated with another company, whose franchise included the right to lay tracks on a certain street. This right had never been used, and the city had given a similar right to a third company, which laid and operated a single track, and subsequently sold out to defendant. Defendant tore up the single track, and laid a double track, which was operated in connection with its other lines. In an action against the city and defendant by an abutting owner to enjoin the collection of expenses of paving such street, defendant, in its answer, claimed that it was exempt, and that its rights in such street were derived from its purchase. On the court's holding that the contract did not apply to streets occupied under rights acquired by such purchase, defendant, without amending, or introducing proof to overcome the admissions in its answer, claimed that it laid the double track as an extension of its former tracks, under the disused franchise of the company with which it consolidated. Held, that a finding that defendant's tracks were an extension, and hence within the contract, was not justified.

Smith and Fursman, JJ., dissenting.

Appeal from special term, Broome county.

Bill by George A. Kent against the common council of the city of Binghamton and another to enjoin the collection from the taxpayers or abutting owners of expenses for street paving. From a judgment for defendants, plaintiff appeals. Reversed.

See 70 N. Y. Supp. 465, for full statement of facts.

Argued before PARKER, P. J., and KELLOGG, SMITH, CHASE, and FURSMAN, JJ.

Carver & Deyo, for appellant.

Curtiss, Arms & Keenan (C. A. Collin, of counsel), for respondents.

PARKER, P. J. When this case was before us on the former appeal, the question presented was whether this defendant was relieved by the provisions of the contract of April 26, 1892, from paving be-

tween the rails, etc., as is required by the provisions of the general
railroad law. The argument of the defendant the Binghamton Rail-
road Company then was that it was a company with which the par-
ties of the first part to that contract had become merged and consoli-
dated, and that therefore, by its express terms, the contract inured
to its benefit, and, further, that the tracks over which this controversy
arises, viz., those then operated by the Court Street & East End Rail-
road Company, were an addition and extension of the tracks of such
contracting companies, and that therefore the terms and conditions
of such contract, by its express provisions, applied to them. We
then held that the benefits which were to inure to the successors and
assigns of the contracting companies, or to one with which they might
thereafter consolidate, were no broader than were thereby given to
such companies themselves, and that, very clearly, the exemption
or modification of the statutory liability so given did not extend be-
yond the tracks then being operated by them, or to such additions
or extensions of those tracks as might thereafter be made, and that,
conceding that such exemption would inure to the benefit of this de-
fendant, as a company with which those contracting companies had
consolidated, nevertheless, inasmuch as the tracks in question had
subsequently to the contract been acquired from a separate and inde-
pendent company by this defendant, and were therefore tracks not
then used by such contracting companies, nor ones as to which either
of them had any interest or owed any duties, they could not be deemed
extensions or additions to the tracks referred to in the contract, and
hence none of the provisions of such contract should be deemed ap-
plicable thereto. That conclusion resulted in depriving the defend-
ant of any advantage under such contract, as to the tracks in ques-
tion, and required a new trial. No suggestion was then made that
either of the contracting companies had any interest in the tracks
then operated by the Court Street & East End Railroad Company,
or in its line, or any rights under its own charter to extend its tracks
over any part of that line; and all of the rights which this defendant
then claimed over the tracks in question were claimed in its answer
to have been derived by consolidation with the Court Street & East
End Railroad Company. Upon this appeal, however, and after a sec-
ond trial, this fact is called to our attention, and this further question
is presented: The Binghamton & Port Dickinson Railroad Company,
which was one of the parties to such contract, was given the right,
by the charter under which it was organized, to build its tracks over
the street in question, as well as over several other streets in the city
of Binghamton. That charter was acquired in 1868. It built and
operated a line over the other streets, but never took any measures
whatever to build over the street in question. In 1886 the Court
Street & East End Railroad Company organized under the general
act. In the certificate which it filed to so organize, it named the
street in question as a part of its line, and subsequently laid and oper-
ated its tracks over the same, and had been doing so for many years
prior to the contract in question. Such was the situation when such
contract was executed. The defendant now claims that after the
Binghamton & Port Dickinson Railroad Company had become merged

and consolidated with it, which was some two years after the contract was executed, and during which time the Court Street & East End Railroad Company had continued to operate its road over the street in question until it also was consolidated with the defendant, it (this defendant) tore up the track so used by such company, and built a double track over the street in question, under and in pursuance of the franchise given by its charter to the Binghamton & Port Dickinson Railroad Company. Such new tracks connect with the old tracks of the latter company at Court street, and hence it claims that the tracks over which this controversy arises are clearly an "extension or addition" to the tracks of one of such contracting companies, and therefore are within the provisions and benefits of such contract. The trial court has so found, and the question is now presented whether this new finding should work a change in our decision.

If the defendant's right to build the tracks in question existed only by virtue of franchises acquired from the Binghamton & Port Dickinson Railroad Company, then we should assume that it was extending their tracks when it built the ones in question; but if, from this record, it appears that it might have acquired from its consolidation with the Court Street & East End Railroad Company the right to build such tracks, then we ought not to assume that those tracks are an extension of the tracks referred to in such contract, unless it clearly appears from the facts in the case that the franchise under which they were actually built was derived from the Binghamton & Port Dickinson Railroad Company. If it had appeared that the defendant, claiming the franchise to build over such street from the Binghamton & Port Dickinson Railroad Company, and that the Court Street & East End Railroad Company had invaded such right, and was occupying such street without right and in violation of such franchise, had taken any measures to oust the latter company therefrom, or to repudiate, even, their right to be there, then it would clearly appear that their claim, at least, was to extend the tracks of one of the contracting companies. But as a matter of fact, it is claimed in its answer, which still stands without amendment, that its rights over the street in question are derived from the Court Street & East End Railroad Company. The validity of that company's occupation of that street is not questioned, and, on the pleadings in this case, it seems to stand admitted that the right to maintain tracks on that street belonged to the latter company, and passed from it to this defendant. Now, what facts are shown to overcome that admission? The president of the defendant testifies that it built the double tracks over the street in question under the franchise derived from the Binghamton & Port Dickinson Railroad Company's charter. But that is a mere opinion, and somewhat weakened by his verification of the answer above referred to, and therefore we should look for facts upon which such opinion may be sustained. It is claimed that the defendant got permission of the city to build the double tracks over that street. But the Court Street & East End Company had acquired the right to build a double track, as much as it had acquired the right to build a single track, there, and there is nothing in the fact

that it got such permission to indicate which franchise the defendant claimed to be acting under. So, also, it is claimed that no consents were acquired from the adjacent owners, thus indicating that it was proceeding under the Binghamton & Port Dickinson Company's charter, which required no consents. But the Court Street & East End Railroad Company had procured all the consents which were necessary, under its charter, to authorize the street to be occupied by a railroad; and hence, if the defendant were proceeding under its charter, no additional consents need have been procured. Neither of these facts even tends to dispute the direct claim set up in the answer that this defendant derived its rights in the street in question from the Court Street & East End Railroad Company. No fact proven in the case contradicts or overcomes that concession, and nothing, therefore, warrants the conclusion that the tracks in question were built in pursuance of the franchise derived from the Binghamton & Port Dickinson Railroad Company's charter. They now, as they did before, appear to have been built under the authority set up in the answer, and can no more now than before be deemed to be an extension of one of the contracting company's tracks. Under this view, it does not become necessary to determine whether the Binghamton & Port Dickinson Railroad Company had at the time of the contract any rights left over the street in question, nor whether, under the conditions as they then existed, the contract should be construed to include the possible right of such company to oust the Court Street & East End Railroad Company, and extend its own tracks over a street so occupied by such other company. It is probable that neither party to that contract contemplated any right to extend over that street, especially as the city—one of the parties—had already granted to the Court Street & East End Railroad Company the right to occupy it under its charter. But that question need not be discussed, since I am of the opinion that the defendant has in fact made no effort to extend any tracks under the franchise given to the Binghamton & Port Dickinson Railroad Company. Concede that it might have done so if it had desired; that right would not justify the conclusion that the tracks over which this controversy arises are an extension of any tracks referred to in the contract.

I understand that the defendant's right to an exemption from the assessment sought to be imposed upon it by this plaintiff, and the action of the city in reference thereto, are based upon the theory that the contract above referred to controls. What would be the action of the city did it not suppose itself bound by that contract, does not appear. The plaintiff has the right to test the validity of that contract, as applied to these tracks, and to succeed in this action, provided it must be held that such contract does not fix the liability of the defendant with reference to the street in question.

The judgment must be reversed, and a new trial granted; costs to appellant to abide the event.

KELLOGG, and CHASE, JJ., concur. SMITH, J., dissents, upon grounds stated upon former appeal.

FURSMAN, J. (dissenting). This action has been twice tried. On the first trial the court at special term dismissed the complaint on the merits. On appeal to this court the judgment was reversed, and a new trial granted. 61 App. Div. 323, 70 N. Y. Supp. 465. That decision was put upon the ground that the Court Street & East End Railroad Company was an independent corporation owning and operating a road over a portion of Court street, in the city of Binghamton, and was not a party to the agreement of April 26, 1892, between the city of Binghamton, the Binghamton Street Railroad Company, and the Binghamton & Port Dickinson Railroad Company, and that the subsequent consolidation in 1894 of the Binghamton Railroad Company and the Court Street & East End Company did not, therefore, relieve the former from the legal obligation which rested on the Court Street & East End Company to pay that portion of the expense of paving that part of Court street occupied by it imposed by section 98 of the railroad law of 1890 (chapter 39, Gen. Laws); and in this connection it was also held that the provisions of the agreement of April 26th do not extend to the Court Street & East End Company's tracks, notwithstanding that by its terms it is made to apply to any company "with which" the Binghamton Railroad Company might thereafter become "merged or consolidated." If the question had not already been determined by that decision, I would be inclined to concur in the dissenting opinion of Mr. Justice SMITH, for the reasons stated by him. On the trial now under review, however, new evidence was introduced, and a different theory adopted. It is now made to appear that the franchise of the Binghamton & Port Dickinson Railroad Company originally applied to and embraced that part of Court street as to which the present controversy exists. On the 11th of August, 1892, the Binghamton Street Railroad Company and the Binghamton & Port Dickinson Railroad Company were consolidated under the railroad law of 1890 (chapter 39, Gen. Laws), and thereupon took the name Binghamton Railroad Company. By section 72 of this law it is provided that, upon such consolidation being effected, "all the rights, privileges, exemptions and franchises" of each of the corporations thus consolidated shall be deemed to be transferred to and vested in the new corporation. It is clear, therefore, that whatever right and franchise, if any, the Binghamton & Port Dickinson Railroad Company then had to lay tracks in Court street, became vested in the Binghamton Railroad Company; and the trial court has found, upon sufficient evidence, that the tracks in Court street were laid under and by virtue of the franchise of the Binghamton & Port Dickinson Company. This court decided in Davidge v. Common Council, 62 App. Div. 525, 71 N. Y. Supp. 282, that the agreement involved in this action is valid, and was legally confirmed by the confirmatory act of 1893. The only important inquiry, then, is whether that company had lost such right and franchise by abandonment, nonuser, or failure to construct within the time prescribed by its charter. I think it had not. The charter (chapter 501, Laws 1868) required the construction of the road to be commenced within one year from the passage of the act, and its completion within five years from such commencement. In 1869 the period

of commencement was extended two years.   Chapter 447, Laws 1869. In 1871 the time within which the construction must be begun was extended to May 1, 1872.   Chapter 379, Laws 1871.   This necessarily carried with it an extension of five years from that date for the completion of the road,—to May 1, 1877.   The company did not lay tracks on the part of Court street here involved within that time, nor at all until after November 16, 1896.   Neither the charter of 1868 nor the subsequent acts impose a penalty or declare a forfeiture consequent upon a noncompliance with these requirements.   A quasi public corporation, such as the Binghamton & Port Dickinson Railroad, cannot, at will, abandon a portion of its road, nor relinquish its right to operate such portion.   Abandonment, nonuser, a failure to construct, may, indeed, expose it to a forfeiture of its franchise; but, in the absence of express provisions in the law under which it is organized, such forfeiture can be declared only by the legislature, or by the court at the suit of the people (Trelford v. Railroad Co., 6 App. Div. 204, 40 N. Y. Supp. 1150; People v. Railroad Co., 24 N. Y. 269, 82 Am. Dec. 295; In re Brooklyn El. R. Co., 125 N. Y. 439, 440, 26 N. E. 474); and, until forfeiture is declared, its corporate existence, powers, and rights are as full, complete, and enforceable as if it had fully complied with every legal requirement.   So long as it remains a corporation at all, it necessarily possesses every right, privilege, and power bestowed upon it in the act creating it.   The Binghamton Railroad Company, having by the consolidation in August, 1892, acquired the right of the Binghamton & Port Dickinson Company to lay tracks in Court street at the place in question, might do so under the charter of that company; and the agreement of April 26, 1892, as legalized and confirmed by chapter 231 of the Laws of 1893, applies to and embraces the same.

The judgment ought, therefore, to be affirmed.