(40 Misc. Rep. 1.)

KENT v. COMMON COUNCIL OF CITY OF BINGHAMTON et al.

(Supreme Court, Special Term, Broome County.   February, 1903.)

1. STREET RAILROADS—CONSOLIDATION—EFFECT.

A street railway company in 1868 obtained a charter, under Laws 1868, p. 1042, c. 501, to construct a surface street railway. The charter provided for the construction of tracks on other streets in said city at any time within five years from the granting of the charter. The railway continued to operate its cars upon the line so built down to the year 1894, without acting upon the original option to lay its tracks on a certain other street. In 1886 another street railway company obtained a franchise to run a street railway on one of the streets granted under the original charter, but not used. The original company thereafter purchased the stock of such second company and consolidated the companies. *Held*, that it operated that portion of the road purchased under the charter of the second company until it subsequently reconstructed that portion with the consent of the municipality.

2. SAME—PAVING BETWEEN TRACKS—CONTRACT WITH CITY.

Where, under its charter, a street railway company is bound to pave between its tracks and for two feet on either side of them, an agreement by it with the city that it shall be liable for only one-fifth of the expense of the paving is invalid.

3. SAME.

Where a street railway company, under its charter, was liable to pay only one-fifth of the cost of pavement, but did not act under such charter, and thereafter purchased the franchise of a street railway company, which by its charter was bound to pave between its tracks and for two feet on either side of them, the purchasing company was bound, as to the paving, by the provisions in the charter of the company which it purchased, and not by the provisions of its original charter, the powers of which it had never attempted to exercise.

Action by George A. Kent against the common council of the city of Binghamton and another.   Judgment for plaintiff.

Carver & Deyo, for plaintiff.
Curtiss, Arms & Keenan, for defendants.

FORBES, J.   This action has now been tried three times.   Two former decisions and judgments have been reversed by the Appellate Division.   This is the third trial.

This is an action brought by a taxpayer of the city of Binghamton to restrain the enforcement of a tax levied by said city for paving a portion of Court street, known as the "East End," upon which the Binghamton Railroad Company now operates a double-track surface trolley road.   In 1868 what was then known as the Port Dickinson & Binghamton Railroad Company obtained a charter, under chapter 501, p. 1042, of the Laws of 1868, to construct and operate a surface street railroad between Port Dickinson and the city of Binghamton. This railroad was constructed and operated under said franchise and charter along and upon certain streets in said city, including that portion of Court street running westerly from Chenango street.   That charter and the franchise given under it by the city provided for the construction and operation of said road upon and along other portions of the streets in said city, including the eastern portion of Court street, covering the locus in quo.   That charter provided that said company might exercise the option to commence to build and extend said road

at any time within five years from the granting of said charter. Laws 1871, p. 739, c. 379, § 2. This legislative enactment extended to and covered the year 1872. Said company did not thereafter construct or operate any surface road upon Court street east of Chenango. street. Nor was the time for the construction of said railroad further extended by the Legislature. The company continued to operate its cars upon the surface line so built by it down to the year 1894, without in any manner acting upon or accepting the original option given to it to lay its tracks upon East Court street along and upon the locus in quo. It is claimed on the part of the plaintiff that the building of said company's line upon that portion of Court street was abandoned. In the year 1886 what is known as the Court Street & East End Railroad Company applied for a charter, and it was granted a franchise by the city to run and operate a street railway upon the surface of East Court street to the city limits. The operation of this road continued without interference on the part of the defendant company until 1894, when the defendant company purchased the stock of the. Court Street & East End Railroad Company, and consolidated that road with other previously acquired roads into what since that time has been known as the Binghamton Street Railroad Company; tearing up the old tracks of the East End Company, and constructing a double-track surface line, to be operated under the trolley system. This was done upon and under the petition of said consolidated company, with the consent of the common council of said city, whose engineer, to some extent, at least, superintended the construction of said consolidated surface railroad, directing the manner in which said construction should be made, and the kind of rails and ties to be used thereon; and the same was built as a trolley system, and said road was in operation at the time this action was commenced. The defendant city reserved to itself certain privileges which were provided for in a certain contract made for the construction of said road and the erection of the trolley poles upon and along said street.

The question in this action arises over the paving of said street covering the locus in quo. The defendant company now claims that under its original charter, the franchise granted to it, and the contract so made with it by the other defendant, the city of Binghamton, the defendant company is exempt from paving between its tracks and two feet each side thereof. The defendant company admits that under its contract, charter, and franchise, it is liable to pay one-fifth of the value of said pavement on Court street at the locus in quo. It now claims to be operating said trolley line under its original charter and franchise, under the contract with and the consent of the defendant the city of Binghamton. The defendant company also claims that its purchase of and the consolidation with the Court Street & East End Company was merely consummated for the purpose of taking to itself the operation of said railroad, upon and over the locus in quo, under the defendant company's original charter. There is no question that, if said defendant company is so operating and running said road, it is then exempt from the expense of said additional paving. In 1884, prior to the construction of the Court Street & East End Railroad, the Legislature passed a general act (page 309, c. 252) relating to surface railroads

in all villages and cities in this state. The Court Street & East End Railroad Company was incorporated and took its franchise under that act, with the consent of the common council of said city. That act provides that the railroad company shall pave, or pay the expenses of paving, between its tracks and two feet each side thereof.

Both of the defendants now join in the contention that the defendant company is exempt from the burden of any additional expense for paving said street. This question has been passed upon twice by the Appellate Division of this department unfavorably to these defendants' contention, although by a divided court. On the last appeal two of the learned justices of the Appellate Division dissented; holding that, by the peculiar wording of the charter and franchise, the defendant company constructed and is now running and operating said road under its original charter. If I felt at liberty to differ from the prevailing opinion, I am inclined not to do so, since it seems to me that the distinctions drawn by the dissenting opinion are obviously too technical to be absolutely just to the plaintiff and the other taxpayers upon and along said street. I cannot see the force of the distinction sought to be made between the words "consolidated with" and "consolidated into" the defendant company, as applied to the almost undisputed facts in this case. I do not see, as a matter of construction, how the phrase "consolidated with" does not mean essentially "consolidated into," since it cannot be possible that it was the intention of either of these companies so consolidated to be consolidated with, except that the companies were to be merged into, each other. "Merger" means something more than mere consolidation. See "Merger," 2 Bouv. L. Dict. 175; Webster's Inter. Dict. 914. Can it be possible that the term "consolidated with" means that the company did not enter into the merger, and that each franchise still stands separate, simply because the word "with" was used instead of the word "into"? What distinctive thing or power is left of the Court Street & East End Company, so consolidated with the defendant company? What right is reserved to the Court Street & East End Company? What right has it in this road now being operated? Are not the charter and franchise of that company incorporated into the defendant company? It may be true that the phrase "incorporated into" is a better phrase than "consolidated with," but, in the construction of statutes, words are sometimes to be given a special signification, for the purpose of carrying out the intention of the parties as well as the obvious intention of the legislators. In the interpretation of statutes and the acts of parties, contracts are to be given an interpretation which will best carry into operation and effectuate the objects to be attained, without reference to accurate grammatical construction of a word, phrase, or sentence. In other words, grammar must yield to the fact, for the purpose of carrying out the intention and object sought to be attained, instead of defeating both the intention of the legislators and the object of the parties. Jackson v. Topping, 1 Wend. 389, 19 Am. Dec. 515; Watervliet Turnpike Co. v. McKean, 6 Hill, 616; Auburn City Bank v. Leonard, 40 Barb. 119; Mullins v. People, 24 N. Y. 399; Matter of Tobin, 53 App. Div. 453, 66 N. Y. Supp. 97; Folmsbee v. City of Amsterdam,

142 N. Y. 118, 36 N. E. 821; Spencer v. Myers, 150 N. Y. 269, 44 N. E. 942, 34 L. R. A. 175, 55 Am. St. Rep. 675; Kinkele v. Wilson, 151 N. Y. 269, 45 N. E. 869. Since the learned justices, dissenting, practically admit that if the phrase "consolidated into" had been used, it would then be easy to agree with the majority of the court in the construction given by them. With this proposition disposed of, it would be easier to proceed with the case and grapple with the other questions raised, since these difficulties would then be only imaginary.

· Are the defendants' claims that the road is now being run and operated under the defendant company's original charter and franchise substantial? It is a rule of construction that the interpretation which the parties themselves have given and placed upon a contract may be used for the purpose of that interpretation. I think it is a mistake to say that the original charter and franchise were enacted and granted without conditions, since the defendant company was not bound to build its road upon East Court street. It had the option only to do so. It was left to the defendant company to exercise that option, first, within five years; second, within two subsequent extensions of time. It is not necessary to say that the franchise was abandoned absolutely after the expiration of the time limit, but it does seem sensible to hold that its option was at an end, and that the defendant company so construed and regarded it, first, because it sought no further extension of the option; second, because the time which elapsed between the expiration of the time for using the option and the full operation of the franchise, nearly 22 years, ought to be sufficient to warn it that it had lost that option, if not the franchise to that portion of Court street.

Again, the defendant company's standing by without objection or protest to the granting of the franchise to the Court Street & East End Company is another acknowledgment that it had lost its option, and therefore its right to construct and operate said road on this portion of said street. This continued from 1887 down to 1894—seven years—as the evidence shows, without a protest or any declaration on its part that it had any rights in the operation or construction of a road on that portion of said street. Moreover, when it negotiated with—when it took and merged into its corporation—the Court Street & East End Road, it again acknowledged the supremacy of that road, and continued to operate it under that purchased franchise until the reconstruction of that portion of the road. It is not necessary for me to say that any act of the Legislature had been overlooked or forgotten, but it is enough that the defendant company recognized the rights, charter, and franchise of the Court Street & East End Company from 1887 down to 1898, at least. How can it now reasonably or sensibly claim that it bought out, consolidated with, or into the other company, and is now continuing the operation of the road under its own original charter? If no harm were to come to anybody by the defendants' present contention and construction of the statute, there would be no occasion to differ with the defendants' contention. Other rights have intervened. A new statute, more favorable to the taxpayers, and therefore to the city, has been enacted during the period of the omission or

neglect of the defendant company to exercise its option to construct and operate a railroad upon and over the locus in quo.

It goes without saying that the charter and franchise are an additional burden upon the street—to the abutting owners and to taxpayers —and it was to relieve the city and its taxpayers of a portion of this burden that the new law was enacted, extending the pavement between, and two feet each side of, the track, giving to the abutting owners and the city and its inhabitants better facilities for going along and upon said street, and, when the business of said thoroughfare demanded the increased expense of paving, that the defendant company should share to the full extent of the statute in the expense of its construction. This seems to me to be the intention of the Legislature, in granting a charter at all, that the street should be restored to its original usefulness, and should be kept in repair for the use of the public.

The defendant company now contends—and is joined by the city in that contention—that it has acquired its right to exemption from its original charter with the consent of the city, the other defendant. This is attempted to be done, ignoring the rights of the abutting owners, the taxpayers, and the city at large, for the benefit of the defendant company. This certainly is not equitable; nor, in my judgment, is it lawful or proper that the additional burden, beyond one-fifth of the expense for paving said street, should be thrown upon the city, abutting owners, and the taxpayers at large. Archer v. City of Mt. Vernon, 63 App. Div. 286, 71 N. Y. Supp. 571. Even if the city had the technical right to do so, it ought not to be permitted to exercise it under the circumstances, but I think that the law itself forbids and prohibits such a contract between the city and the railroad company.

The consent of the inhabitants along the street to construct said road cannot be construed as a waiver of their rights, or a bar to their now insisting that their rights shall be protected. As an original proposition, it ought to be condemned. No right is given to said city by its charter, nor is there any statute which gives it the power, to make such a magnificent gift to the company against the protest of the taxpayers and the abutting owners upon said street.

In the case of Conway v. City of Rochester, 157 N. Y. 33, 38, 51 N. E. 395, 396, the learned Chief Justice of the Court of Appeals uses expressive language prohibiting such a gift by a municipal corporation in favor of a railroad company:

"The municipal authorities are given no power to relieve a railroad corporation of the whole or any portion of the needed repairs, or to impose the whole or any portion of the cost upon the abutting owners or the city at large."

The learned Appellate Division adopts that reasoning in its disposition of the case at bar. Kent v. Common Council, 61 App. Div. 323, 70 N. Y. Supp. 465; Id., 72 App. Div. 623, 76 N. Y. Supp. 584. This doctrine, in effect, was affirmed by the Court of Appeals in Ingersoll v. Nassau El. R. Co., 157 N. Y. 453, 52 N. E. 545, 43 L. R. A. 236, and is followed and approved in Village of Mechanicville v. Stillwater & M. S. R. Co., 35 Misc. Rep. 513, 71 N. Y. Supp. 1102.

This is an action in equity, and the rules of equity should be applied,

as the situation is disclosed at the end of the trial. Lyle v. Little, 28 App. Div. 181, 50 N. Y. Supp. 947; Sherman v. Foster, 158 N. Y. 587, 53 N. E. 504.

As I have already said, it is not necessary to hold that the defendant company has abandoned its charter, but it has lost its right to exercise its option, and it ought now to be estopped from reclaiming it.

It is said in People v. Broadway R. Co., 126 N. Y. 29, 26 N. E. 961, that:

"This defendant should not stand in the streets of Brooklyn, claiming franchises which for many years it refused to use, and thus bar out other railroads which might be constructed for public convenience and accommodation. If these franchises are of no value, it is not harmed by the judgment of the Special Term. If they are valuable and of growing worth, it should have discharged its duty to the public by using them."

In People v. Albany & Vermont R. Co., 24 N. Y. 261, 82 Am. Dec. 295, the Court of Appeals said:

"It seems that the corporation owes a duty to the public to exercise the franchise granted to it, and that it cannot abandon a portion of its road and incur a forfeiture at its mere pleasure."

So far as the abandonment of its franchise is concerned, I am aware of the fact that it will not be held to have abandoned its charter and franchise over that portion of the road which it did accept and which it has continued to operate, without some affirmative action either by the state or the municipality interested to declare it abandoned. Trelford v. Coney Island R. Co., 6 App. Div. 204, 40 N. Y. Supp. 1150; Matter of Brooklyn E. R. Co., 125 N. Y. 434, 26 N. E. 474; People v. Ulster & D R. Co., 128 N. Y. 240, 28 N. E. 635.

Both defendants have recognized the fact of the abandonment of its option to construct and operate this piece of road, by the consolidation, the building of the new tracks upon the defendant company's petition, and the consent of the municipality, properly recorded, since it would be foolish to contend that, if it still had the right to exercise that option, the defendant company would again ask the municipality in these latter years to consent to the building and operation of its present road.

I think the plaintiff's contention is strengthened, rather than weakened, both by the answer and the additional evidence given on this trial.

If I am correct in the conclusions reached, the plaintiff is entitled to the relief demanded in his complaint, and to a permanent injunction restraining the municipality from enforcing the tax levied. Judgment is granted accordingly, with costs.

Judgment accordingly, with costs.