IRVING TRUST COMPANY, as Trustee, etc., Plaintiff, *v.* SYRACUSE, LAKESHORE AND NORTHERN RAILROAD COMPANY and Others, Defendants.

Supreme Court, Onondaga County, May 5, 1934.

*Hiscock, Cowie & Bruce,* for the plaintiff and referee.

*Edward L. Robertson,* for the relator, City of Syracuse.

CREGG, J.   The above-entitled action was begun to foreclose a mortgage given by the defendant Syracuse, Lakeshore and Northern Railroad Company upon all of its property located in the counties of Onondaga and Oswego.   This proceeding is brought on for hearing through an order procured by the city of Syracuse directing the plaintiff and the referee in the mortgage foreclosure proceedings to show cause why an order theretofore made directing said referee not to pay certain alleged local improvement taxes to the city of Syracuse should not be modified so as to direct said referee to pay such taxes.   It is predicated upon the theory that the share of the defendant Syracuse, Lakeshore and Northern Railroad Company's indebtedness for the paving, repaving and resurfacing of certain streets in the city of Syracuse, over which its lines of railway extended, is a first lien upon the funds now in the hands of the referee, realized by him from the sale of the property, in said foreclosure proceedings.   The mortgage became a lien a long time prior to the paving of said streets.   The proceeds of the sale are not sufficient to pay the mortgage indebtedness.

The defendant Syracuse, Lakeshore and Northern Railroad Company was organized in 1905, and thereafter constructed the street railway in question.   In 1907 it issued its first mortgage or deed of trust to secure five per cent gold bonds not exceeding $2,500,000, the proceeds of which were used to pay for, construct and equip the railway.   The mortgage in question covered all of the property of the defendant company, real, personal and mixed, in possession or expectancy, then owned or thereafter acquired, together with all its tenements, hereditaments, rights, franchises, easements, privileges, immunities, appurtenances, etc., then owned by said defendant railway or thereafter acquired by it.   The railroad company operated a street surface and interurban railway

from the city of Syracuse through the village of Baldwinsville, Onondaga county, N. Y., and through the village of Phœnix and the city of Fulton and to and into the city of Oswego, Oswego county, N. Y. Said railroad company owned real and personal property together with franchises, etc., in all of said cities and villages. In 1913 the defendant railroad was consolidated with two other railroads but we are not concerned here with that consolidation.

Default occurred in the payment of interest on said mortgage and foreclosure proceedings were begun by the Knickerbocker Trust Company, plaintiff's successor trustee. On May 1, 1927, T. C. Cherry was appointed mortgage receiver therein. Mr. Cherry operated said railroad as receiver until June 18, 1931, when all of the property, franchises, etc., of the railroad company owned on that date were held to be subject to the lien of the mortgage and sold at public auction under direction of Horace M. Stone, referee. The property did not bring sufficient to satisfy the mortgage indebtedness.

During the years 1920 to 1928 the city of Syracuse paved and resurfaced certain streets known as West Belden avenue, Noxon street, North Clinton street, Herald place and Hiawatha street in said city. The defendant railroad company owned franchises and operated its railways over said streets. For the purpose of this decision it is not necessary to consider, in detail, all of the pavements. North Clinton street repavement is sufficient because the same facts apply to all the others except Hiawatha street.

After the necessary proceedings were had for the repavement of said North Clinton street the common council by ordinance of March 26, 1928, provided as follows: " Be it Ordained, that the widening and repaving of North Clinton street from Genesee Street to the north line of Herald Place and Herald Place (formerly Noxon street) from North Salina street to North Clinton street in the City of Syracuse, N. Y., be and is hereby ordered; that the plans and specifications of the City Engineer therefor and his estimated quantities and expense thereof are approved; that the cost of said improvement is hereby fixed in the sum of twenty-one thousand nine hundred seventy ($21,970) dollars, exclusive of the city's share, to be assessed to Empire United Railways, [for the purpose of this proceeding Empire United Railways means Syracuse, Lakeshore and Northern Railroad Company] and that one per cent thereof is hereby added thereto pursuant to law, *and the City Assessors are directed to assess such aggregate amount pursuant to law and as local improvement No. 2331.*" (Italics ours.) The railroad company's share was later rebated $10,593.01.

The franchise of the railroad company, in reference to paving, repaving and resurfacing of the streets over which the railway operated, provides as follows: "And whenever said streets or parts thereof shall be paved or repaved the portion so to be kept in repair by said corporation, its successors and assigns, shall be paved to conform therewith, or in such manner as the Common Council shall direct. Such paving or repaving to be done by said corporation, its successors or assigns, under the direction and supervision of the Commissioner of Public Works, or at the option of the Common Council of said City, in the first instance, without previous request to said corporation, its successors or assigns, to do the same *and in the event of such work being done by the city the expense thereof shall be paid by said railroad corporation, its successors or assigns, on demand, or at the option of the Common Council assessed upon and collected from the property of said corporation, its successors and assigns, as other local assessments are made and collected.*" (Italics ours.)

Section 124 of the Second Class Cities Law, after providing for the construction of pavements in general and the manner of assessing the costs thereon upon abutting property, provides as follows: " Where a street surface railroad shall be laid in any street which it is determined to improve as herein provided, the proposals and contract for such improvement shall include the improvement of the space between the tracks of such street surface railroad, the rails of such tracks and two feet in width outside of such tracks, and the work of improvement in such space shall be done at the same time and under the same supervision as the work of improvement of the remainder of such street. *After opportunity to be heard has been given* to the company owning or operating such street surface railroad, the board of contract and supply may prescribe the materials to be used in improving such street within the railroad space above described. *The entire expense of the improvement within such railroad space shall be assessed and levied upon the property of the company owning or operating such railroad and shall be collected in the same manner as other expenses for local improvements are assessed, levied and collected in the city; and an action may also be maintained by the city against the company in any court of record for the collection of such expense and assessment.*" (Italics ours.)

Section 178 of the Railroad Law provides: " Every street surface railroad corporation, so long as it shall continue to use or maintain any of its tracks in any street, avenue or public place in any city or village, shall have and keep in permanent repair that portion of such street, avenue or public place between its tracks, the rails of its tracks, and two feet in width outside of its tracks, under the supervision of the proper local authorities, and whenever required by

them to do so, and in such manner as they may prescribe;   *  *  *. In case of the neglect of any corporation to make pavements or repairs after the expiration of twenty days' notice to do so, the local authorities may make the same at the expense of such corporation."

Section 13 of the Tax and Assessment Act of the city of Syracuse (Laws of 1906, chap. 75), as amended by chapter 304 of the Laws of 1923, provides as follows: "Whenever a local improvement shall be ordered by the Common Council, the expense of which is to be assessed locally other than as a part of the general city tax, the city engineer shall submit to the Common Council his estimate of the total cost thereof, including the cost of inspection and all other expenses incidental to or connected with said improvement and the plans and specifications therefor, *and the city engineer shall, at the same time, furnish the board of assessors a pin-pricked copy of the latest field map of the area affected, which*  * * * *show the original lot lines, blocks and tracts of land against which the assessment for such improvement is to be made.*

" *The Board of Assessors, upon receipt of such map, shall forthwith make a search of the records in the Onondaga County Clerk's Office, and otherwise for the names of the owners of the property against which any portion of the cost of such improvement is to be assessed,* and thereupon deliver to the city clerk a list of such names.

" The Common Council shall upon receipt of such plans and estimates, consider the same and adopt suitable plans and specifications for the improvement, and shall estimate and determine the amount of money deemed by it necessary to be raised to defray the entire cost of such improvement including all expenses incidental thereto and connected therewith *and shall direct the Board of Assessors to assess the same upon the property liable to assessment therefor in the form and manner provided by law.*

" *It shall thereupon be the duty of the Board of Assessors to assess the same upon the property liable to assessment therefor as provided by law, without reference to erections or improvements thereon.*

" *They shall make out an assessment roll in which they shall briefly describe the several parcels of land assessed as nearly as practicable, and set down the amount in dollars and cents assessed on each parcel.*" (Italics ours.)

Section 14 of the original act of 1906, as amended by chapter 304 of the Laws of 1923, after referring to local assessments, provides as follows: "*All lands within said city whether owned by the State or any membership or other corporation or association shall be liable for assessments for local improvements as herein specified and no lands shall be exempt therefrom.*

" *The corporation counsel may maintain an action in the name of the city against any person, corporation or association for the recovery of the amount of any assessment for a local improvement,* heretofore or hereafter assessed or levied, together with the interest, fees, and expenses thereon as herein provided and the cost of the action in any court, *at any time after the same shall become due and payable* as provided herein, *notwithstanding that the time limited by law in which any such action should be commenced has expired.*

" *Every assessment for a local improvement shall be and become a lien upon the property assessed upon the date when the contract for the work has been executed* by the contractor and a notice has been filed with the city treasurer by the board of contract and supply of the execution of said contract *and shall remain a lien until fully paid.*" (Italics ours.)

The assessors of the city of Syracuse did not assess or attempt to assess the railroad company's share of any of the above-mentioned improvements against any particular parcel of land or property of the railroad company except one small parcel of land for the paving of Hiawatha street. They simply made entries in the assessment rolls showing the railroad company's share of each of said improvements. They entered the railroad company's share of the cost of repaving North Clinton street at $22,189.70, less the rebate above mentioned.

During the receivership of Mr. Cherry, between July 8, 1928, and June 18, 1931, the date when the property was sold by the referee, he paid from the earnings $3,479.01 on account of the North Clinton street indebtedness, leaving a balance unpaid of $8,117.68. In 1933 the city went through the formula of selling said indebtedness as a local improvement tax and bid it in for $9,987.32. The city charged since that date $1,198.44 as accumulated fees.

Notice that application for an order to settle the accounts of the receiver in the mortgage foreclosure proceedings and directing all creditors of the railroad company to present their claims or accounts to the receiver before the 11th day of September, 1933, was duly and regularly published and a copy of said notice was personally served on all creditors of the defendant railroad company, including the city of Syracuse, by serving the city treasurer, city clerk and corporation counsel. Thereafter another notice that application would be made to the court at two o'clock P. M. on the said 11th day of September, 1933, for an order settling the accounts of such receiver and for his discharge. Such notice was mailed to all creditors of the railroad company, including the city of Syracuse. Upon the return day of said last-mentioned notice no appearance

was made on behalf of the city and no claim was ever filed with the receiver by the city. The hearing was adjourned from time to time and the accounts of the receiver were finally settled by order entered in the Onondaga county clerk's office February 19, 1934. The referee was directed therein not to pay to the city of Syracuse the railroad company's share of the costs of paving and repaving the above-mentioned streets, from and out of the moneys in his hands or that of the receiver, derived from the sale of the property subject to the lien of the mortgage.

Thereafter an order was procured by the city of Syracuse, directing the referee and the plaintiff herein to show cause why the above-mentioned order should not be opened and modified in so far as said order directed that the said defendant's share of the costs of paving, repaving and resurfacing the streets in question should not be paid from the funds in the hands of said referee derived from the sale of said mortgaged premises.

The contention of the city is that the indebtedness in question constitutes taxes for local improvements and became a first lien upon all of the assets of said defendant railroad corporation, and likewise a first lien upon the proceeds derived from the sale of such assets in the mortgage foreclosure proceedings, now in the hands of the referee.

Plaintiff's contention is that the indebtedness was never a lien upon any specific property of said defendant, except in so far as Hiawatha street pavement is concerned, and is not and cannot be declared a lien on the funds in the hands of the referee; that the railroad company's share of the cost of such improvements constitutes only a general indebtedness against the railroad company, except as to Hiawatha street.

An examination of section 178 of the Railroad Law, section 124 of the Second Class Cities Law and sections 13 and 14 of the Tax and Assessment Act of the City of Syracuse and the railroad company's franchise, fails to disclose any authority in the city of Syracuse to assess the railroad company's share of such improvement against the general property of the railroad company wherever located and thus make it a first lien thereon. There is no authority in the assessors to levy assessments against property outside the city.

Under existing statutes the city could assess the cost of the above-mentioned local improvement against the franchise of the railroad company and any property abutting on the above-mentioned streets. There is some doubt as to whether or not under existing statutes the city could assess property of the railroad company located anywhere within the city, and deemed to have

been benefited by the improvements, but that question is not here because the assessors never attempted to make such assessments.

The question of whether or not a particular parcel of land has been benefited by an improvement is usually a question of fact. The test is not whether the owner received any advantage but whether its general value has been enhanced. It is immaterial whether the land is owned by a railroad company or an individual, unless it can be said, as a matter of law, that such improvement could not by any possibility increase the value of the property. If it could not be so said then the extent of the benefit would be for the determination of the proper assessing officers. (*Matter of City of New York*, 233 N. Y. 387; *Mackey* v. *Choctaw, O. & G. R. Co.*, 261 Fe. 344; *Columbia Inv. Co.* v. *Long Branch, etc.*, 281 id. 342, 344.)

Unless a tax lien is created pursuant to statute and the proper assessing authorities follow the statute, a municipality is not entitled to have local improvement taxes paid from the moneys in the hands of the referee in preference to the claim of a prior mortgage lien. (*Richmond* v. *Bird*, 249 U. S. 174.)

The case of *N. Y. Terminal Co.* v. *Gaus* (204 N. Y. 512), cited by the city as being directly in point, does not, in my opinion, apply to the facts in the instant case. That case involved a franchise tax levied, pursuant to section 182 of the Tax Law, against all the property of a ferry corporation during the time the ferry was being operated by a receiver in mortgage foreclosure proceedings, against the ferry corporation. Section 197 of the Tax Law provided that such taxes " shall be a lien and binding upon the real and personal property of the corporation, joint stock company, association  *  *  *  liable to pay the same." The property was sold in foreclosure proceedings " subject to all taxes that might be liens thereon at the time of the sale."

Plaintiff contended that such taxes were not a valid lien against the property of the ferry corporation, purchased by it in the foreclosure proceedings. The Appellate Division, Third Department, held that the taxes were duly and regularly assessed according to law and constituted valid liens upon the property conveyed to the plaintiff. The Court of Appeals affirmed the Appellate Division.

In the instant case the franchise of the railroad or any statute that has been called to my attention does not attempt to make taxes for local improvements in the city of Syracuse a lien against the general property of the railroad company, and no effort was made by the assessing authorities of the city to make such taxes a lien upon any specific property of the railroad company, except the Hiawatha street paving.

Section 1087 of the Civil Practice Act does not apply to the instant case because the railroad company's share of the local improvements in question never became liens upon any general or specific property of the railroad except as above indicated and the judgment directing the sale of the railroad company's property was entered prior to the amendment by chapter 741 of the Laws of 1933.

In my opinion, the railroad company's share of such improvements is not a lien upon the funds now in the hands of the referee, prior to that of the lien of the mortgage, except in so far as Hiawatha street paving is concerned. The railroad company's share for paving that street, having been assessed against a specific parcel of land of the railroad company deemed to be benefited by such improvement, constitutes a prior lien against that parcel and likewise the funds now in the hands of the referee or so much thereof as may have been derived from the sale of that particular parcel.

The order settling the accounts of the receiver and directing the referee not to pay the defendant railroad company's share of said improvements should be opened and modified so as to direct the receiver to pay the tax levied and assessed against specific property of the railroad company for paving Hiawatha street but not otherwise. So ordered.