CITY OF YONKERS, Plaintiff, *v.* THE YONKERS RAILROAD COMPANY, Defendant.

Supreme Court, Westchester County, July 20, 1938.

*William A. Walsh,* special counsel, and *Leonard G. McAneny, Corporation Counsel,* for the plaintiff.

*Alfred T. Davison,* for the defendant.

DAVIS, J.   The plaintiff sues to recover from the defendant the sum of $220,661.34, representing the expense of paving between and adjacent to the defendant's railway tracks in certain of the city streets.   The complaint alleges twenty-five causes of action, each of which is based upon a single alleged assessment, except that two assessments are included in the second cause of action.   In the tenth cause of action the plaintiff demands $32,943.89 for the paving of a portion of McLean avenue.   It appeared at the trial that the major part of the defendant's trackage in this area had been removed before the work was done, and a ruling was thereupon made that the maximum amount recoverable under this cause of action would be $991.   The remaining claims of the plaintiff, amounting to $188,708.45, must now be determined.

The paving jobs out of which the alleged assessments arose were performed by the plaintiff between 1922 and 1930.   There is no real dispute as to the cost of the work.   Section 124 of the Second Class Cities Law provides that the entire expense of improving the space between the tracks of a street surface railroad, and a two-foot space outside the tracks, shall be assessed against the railroad company.   Section 178 of the Railroad Law imposes upon street surface railroad corporations the obligation to keep such portions of the streets in

repair, and empowers the municipality to make the repairs at the expense of the railroad company if the latter should fail to do so after notice. Here there was neither pleading nor proof by the plaintiff that any such notice had been served on the defendant, so that section 178 of the Railroad Law is not applicable, and the plaintiff relies entirely on section 124 of the Second Class Cities Law.

The defendant has pleaded a number of affirmative defenses. First in importance is a defense based upon a contract between the parties made in 1893, generally referred to as " the 1893 agreement," which purports to relieve the defendant of any future obligation to bear the expense of street paving between or adjacent to its tracks. It appears from the recitals in this agreement that there had been litigation between the city and the railroad company on the subject of payment for street paving, and that the agreement served the two-fold purpose of settling the existing dispute and fixing the rights of the parties in the future. The litigation was settled by the payment to the city of $47,847, and the following arrangement was made as to future rights and obligations: Under the defendant's original franchise, granted in 1886, the city had been receiving three per cent of the defendant's net receipts after the payment of a six per cent annual dividend to stockholders. By the 1893 agreement the defendant undertook to pay the city thereafter three per cent of its gross receipts. The city on its part agreed that " from and after the execution of this agreement all grading, regrading, regulating, reregulating, paving or repaving, and the keeping in permanent repair of any and all such streets, avenues or public places, including that portion thereof between the tracks, the rails of the tracks, and two feet outside of the tracks (save the work shall be rendered necessary to be done by reason of the acts of the said Yonkers Railroad Company), shall be done by the City of Yonkers at its own cost and expense * * * and no charge, claim, tax or assessment shall be made, levied or imposed upon the Yonkers Railroad Company by reason thereof."

The defendant proved without contradiction that since the making of the 1893 agreement it has paid annually to the city three per cent of its gross receipts as required by the contract. The action of the city in imposing assessments upon the defendant for street paving, from 1922 onward, was a direct violation of the agreement. In attempted justification of the assessments the plaintiff contends (1) that section 124 of the Second Class Cities Law, which directs the city to assess the cost of paving against the street railway company, takes precedence over the contract; and (2) that in any event the defendant waived its rights under the contract by failing to bring

an action to cancel the assessments as provided by section 165 of the Second Class Cities Law.

That portion of section 124 of the Second Class Cities Law which imposes an obligation upon street railroad companies was not enacted until 1913. Obviously the statute could not impair or nullify a valid existing contract. If the plaintiff had attacked the validity of the contract a serious question might have been presented as to the power of the municipality to relieve the defendant of the duties imposed by section 178 (then numbered section 98) of the Railroad Law. That statute is mandatory, and it has been held that a city has no authority to contract away the obligation imposed upon the railroad company (*Conway* v. *City of Rochester*, 157 N. Y. 33), even in a case where the city receives something of value in return for the exemption. (*City of New York* v. *Brooklyn, Q. C. & S. R. R. Co.*, 156 App. Div. 856; affd., 213 N. Y. 634.) But the plaintiff did not call the validity of the contract into question. On the contrary, its counsel conceded on the record that the validity of the 1893 agreement was not disputed. It is quite possible that in 1893 Yonkers was a third class city, and, therefore, within the exception provided by section 173 (originally numbered section 93) of the Railroad Law, which permits cities of the third class to contract with street railroad companies with respect to street paving. The right granted to third class cities by the latter statute confers the " power to contract to the exclusion of all general laws on the subject, and to the exclusion of all burdens imposed by general laws." (*Davidge* v. *Common Council*, 62 App. Div. 525.) In any event, the validity of the agreement being conceded, the rights of the city against the defendant must be measured by the contract rather than by the statute subsequently enacted.

Since the contract forbade the imposition of any assessment against the defendant, the assessments when made were illegal and void, and may be attacked collaterally. (*Elmhurst Fire Co.* v. *City of New York*, 213 N. Y. 87.) The defendant was not obliged to resort to the remedy provided by section 165 of the Second Class Cities Law, and is not subject to the limitation of time specified in that section. Such a statute limits the rights of a taxpayer who attacks an assessment by affirmative action, such as an action to remove a cloud on title (*Leonhardt* v. *City of Yonkers*, 195 App. Div. 234), or mandamus to compel the cancellation of the assessments. (*Matter of County of Westchester* v. *Common Council of City of Yonkers*, 223 App. Div. 845; affd., 249 N. Y. 517.) But it does not restrict the right to defend an action brought by the municipality to collect the assessment. (*Chase* v. *Chase*, 95 N. Y. 373; *Poth* v. *Mayor*, 151 id. 16; *Matter of Fuerth*, 226 App. Div. 252.)

The 1893 agreement does not affect all the causes of action in the complaint, because some of them relate to routes which were not in existence at the time of the agreement but arose out of later franchises. The seventh, ninth, tenth, eleventh, twelfth, thirteenth and fourteenth causes of action are not subject to this defense. The eighteen remaining causes of action are dismissed for the reasons already stated.

The defendant relies upon other defenses to overcome the seven causes of action which are not subject to the 1893 agreement. All these defenses except one are concerned with alleged defects in the procedure followed by the city in authorizing or performing the work or in making up the assessment rolls. The one exception is the defense of the Statute of Limitations. This defense is clearly insufficient, because the plaintiff's charter expressly provides that the Statute of Limitations shall not be a bar to an action brought by the city to collect an assessment.

In none of the twenty-six assessments described in the complaint was any entry made on the assessment roll as to the property of the defendant against which the assessment was imposed. Although there is some support for the defendant's claim that the omission from the assessment roll of any description of the property invalidates the assessment (*Irving Trust Co.* v. *Syracuse, Lakeshore & N. R. R. Co.*, 151 Misc. 378), it is my conclusion that in a case such as this, where all the railroad company's property is subject to the assessment (Second Class Cities Law, § 124), the omission of the description is a defect of the character contemplated by section 163 of said statute and does not affect the validity of the assessment.

More substantial is the defense that in all except three instances the work was done without notice to the defendant and an opportunity to be heard. The three exceptions are found in the fourth, sixth and twenty-fifth causes of action, which have already been disposed of. Section 124 of the Second Class Cities Law expressly requires that the railroad company shall be given an opportunity to be heard. Failure to afford such an opportunity is no mere irregularity to be disregarded under section 163. The right to be heard is a substantial one and a part of due process. (*Stuart* v. *Palmer*, 74 N. Y. 183.) Curative statutes such as section 163 do not remedy the denial by the city of a right so fundamental. (*Matter of Manhattan R. R. Co.*, 102 N. Y. 301.) In my opinion this basic defect in the proceedings requires the dismissal of the seven remaining causes of action, and furnishes an additional reason for the dismissal of the causes of action heretofore discussed, except the fourth, sixth and twenty-fifth.

A further substantial defect, affecting sixteen of the assessments and the same number of causes of action, consists of the plaintiff's failure to have the work done by competitive bidding. Section 124 of the statute requires the common council to invite proposals and to award the contract to the lowest bidder. In the instances mentioned the command of the statute was ignored. The work was " prosecuted in entire disregard of the statutory scheme for making local improvements, and of restrictions designed for the protection of tax-payers," and the assessments based thereon were void. (*Matter of Manhattan R. R. Co., supra.*)

The defendant interposed a counterclaim for breach of the 1893 agreement, demanding judgment against the plaintiff for the amount of all assessments contemplated by the agreement if such assessments should be enforced. Since that contingency has not occurred, the counterclaim is dismissed.

This case was tried before the court without a jury, and findings were waived by stipulation. The defendant's motions to dismiss the complaint, and each cause of action therein and for judgment in favor of defendant, are granted, with exceptions to the plaintiff. Judgment may be entered accordingly.